Submitted January 30, reversed and remanded with instructions to merge defendant's convictions for first-degree theft into his conviction for organized retail theft and for resentencing; otherwise affirmed October 15, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CURTIS SHINGO FUJIMOTO,
*Defendant-Appellant.*

Washington County Circuit Court
C112098CR; A151014

338 P3d 180

Peter Gartlan, Chief Defender, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

EGAN, J.

**EGAN, J.**

Defendant, who was convicted on one count of organized retail theft, ORS 164.098, and nine counts of first-degree theft, ORS 164.055, challenges his conviction on the organized retail theft count, as well as the trial court's failure to merge the first-degree theft convictions into the organized retail theft conviction. We reject without discussion defendant's argument that the trial court erred in denying his motion for judgment of acquittal on the organized retail theft charge. With respect to merger, as explained below, we reverse and remand with instructions to merge the guilty verdicts on first-degree theft with the guilty verdict on organized retail theft.

Because defendant was convicted after trial, we set out the facts in the light most favorable to the state. *State v. Johnson,* 342 Or 596, 598, 157 P3d 198 (2007), *cert den,* 552 US 1113 (2008). On September 22 and 23, 2011, defendant and an accomplice, Briones, visited numerous malls and retail establishments in the Portland area, including, as their last stop, Washington Square in Washington County. Defendant and Briones flew into Seattle and defendant rented a car, which they drove to the Portland area on September 21. On September 22, defendant entered numerous retail establishments in the Portland area and shoplifted items. On September 23, defendant had Briones take the various stolen items to retail establishments in malls to return the items and seek refunds in the form of gift cards. After Briones had successfully returned items, she gave the gift cards to defendant. Defendant also shoplifted more items on September 23. Defendant's shoplifting activities were detected by security personnel on September 23, and as a result, defendant and Briones were apprehended by Tigard Police. Numerous items of evidence, including stolen items, gift cards, and receipts, were found in their car.

Defendant was charged with nine counts of first-degree theft, ORS 164.055(1)(c),[1] alleged to have occurred in Washington County on or about September 23, with each

---

[1] ORS 164.055(1) provides:

"A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:

count alleging theft from a different store. Each of the nine counts of first-degree theft in this case alleged that defendant "did unlawfully and with the intent to appropriate property to the defendant, buy, sell, and borrow/lend on the security of merchandise and money * * *."

The remaining count, organized retail theft, ORS 164.098,[2] was charged as follows:

"The defendant, on or about September 23, 2011, in Washington County, Oregon, while acting in concert with another person, did unlawfully commit theft and theft by

"(a) The total value of the property in a single or aggregate transaction is $1,000 or more;

"(b) The theft is committed during a riot, fire, explosion, catastrophe or other emergency in an area affected by the riot, fire, explosion, catastrophe or other emergency;

"(c) *The theft is theft by receiving committed by buying, selling, borrowing or lending on the security of the property*;

"(d) The subject of the theft is a firearm or explosive;

"(e) The subject of the theft is a livestock animal, a companion animal or a wild animal removed from habitat or born of a wild animal removed from habitat, pursuant to ORS 497.308 (2)(c); or

"(f) The subject of the theft is a precursor substance."

(Emphasis added.)

ORS 164.015 provides the basic definition of theft:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"* * * * *

"(5) Commits theft by receiving as provided in ORS 164.095."

ORS 164.095, in turn, defines theft by receiving:

"(1) A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"* * * * *

"(3) 'Receiving' means acquiring possession, control or title, or lending on the security of the property."

[2] ORS 164.098(1) provides:

"A person commits the crime of organized retail theft if, acting in concert with another person:

"(a) The person violates ORS 164.015 or aids or abets the other person to violate ORS 164.015;

"(b) The subject of the theft is merchandise and the merchandise is taken from a mercantile establishment; and

"(c) The aggregate value of the merchandise taken within any 90-day period exceeds $5,000."

receiving, the subject of the theft being merchandise and money taken from a mercantile establishment and the value of the merchandise taken within a 90-day period exceeding $5,000."

As noted, defendant asserts that all nine of the guilty verdicts for first-degree theft must merge into the guilty verdict for organized retail theft.

ORS 161.067(1) provides, in part:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Defendant does not dispute that, for purposes of ORS 161.067(1), organized retail theft and first-degree theft involve "separate statutory provisions." He argues, however, that each statutory provision, as alleged in this case, does not require proof of an element that the other does not. He argues that all of the elements of first-degree theft are subsumed by organized retail theft. That is, he argues that first-degree theft does not require "proof of an element that the other[] do[es] not." ORS 161.067(1). Defendant notes that organized retail theft requires proof of theft (including theft by receiving), acting in concert with another, that the theft be of merchandise, that it be within a 90-day period, and that the property be valued at over $5,000. He argues that first-degree theft by receiving required no proof that was not also required to establish the theft element of organized retail theft.

The state makes two responses. First, it argues that the first-degree thefts did not occur during the "same criminal episode" as the organized retail theft. Second, it argues that first-degree theft and organized retail theft each require proof of an element that the other does not. We briefly turn to the state's first argument. As best we understand it, the state reasons that, because the nine counts of first-degree theft do not merge with *each other*,[3] they should not merge into the organized retail theft. The state asserts

---

[3] The trial court stated, with respect to the first-degree theft verdicts, "there are separate victims in Counts 2 through 10, nine separate victims." Those

that the organized retail theft could not have involved the "same conduct or criminal episode" as the first-degree thefts, given that each of the first-degree thefts was distinct from the others. The trial court, however, specifically noted that "it is clear that all of the evidence in Counts 2 through 10 [first-degree theft] was a part of Count 1 [organized retail theft]," and the state does not dispute that. That is, all of the first-degree thefts alleged in Counts 2 through 10 occurred within the temporal scope of the commission of the organized retail theft, and (as explained below) involved proof of the same elements. Nothing in ORS 161.067(1) or the case law interpreting it suggests that, because one of the offenses—the organized retail theft—occurred over a longer period of time than others, merger is precluded.

In determining whether statutory provisions require "proof of an element that the others do not," ORS 161.067(1), we examine only the statutory elements of each offense, not the underlying factual circumstances recited in the indictment. *State v. Cam*, 255 Or App 1, 10, 296 P3d 578 (2013). However, when a statute contains alternative forms of a single crime, "we use the elements of the charged version in the merger analysis." *State v. Alvarez*, 240 Or App 167, 171-72, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011). Thus, although there are several forms of first-degree theft, we focus in this case on first-degree theft by receiving, which was the theory alleged in the indictment and, under ORS 164.055(1)(c), requires proof that the theft by receiving was "committed by buying, selling, borrowing or lending on the security of the property."[4]

findings relate to ORS 161.067(2), which precludes merger where multiple violations of a single statutory provision involve different victims.

[4] To the extent that defendant suggests, relying on *State v. Cox*, 336 Or 284, 82 P3d 619 (2003), that we should not focus on the theory pleaded in the indictment, but rather on the entire definition of theft contained in ORS 164.015, in addressing this merger question, we disagree. *Cox*, while it does touch on some similar issues in the context of former jeopardy, does not govern the analytical process here. *Cox* concerned whether a conviction for theft by receiving in one county barred a prosecution in another county for aggravated theft, where both charges involved the taking of the same property. That case does indicate, as defendant correctly notes, that both forms of theft at issue there were contained within the definition of theft found in ORS 164.015 and, under ORS 164.025, "[e]xcept for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense." *Id.* at 289-90. The court concluded that the "defendant's separate acts of taking and receiving the same aluminum from

ORS 164.098 clearly requires proof of numerous elements that first-degree theft does not, *e.g.*, acting in concert with another, aggregate value of merchandise stolen, etc. The question here is whether ORS 164.055(1)(c) requires proof of an element that is not encompassed by ORS 164.098. The state asserts that it does—it suggests that ORS 164.055(1)(c)'s requirement that the theft by receiving be "committed by buying, selling, borrowing or lending on the security of the property" has no statutory analogue in ORS 164.098. Defendant asserts, on the other hand, that the definition of "theft by receiving" in ORS 164.095(3) ("acquiring possession, control or title, or lending on the security of the property") encompasses the same element described in ORS 164.055(1)(c).[5] As explained below, we conclude that defendant is correct.

ORS 164.095(3) defines "receiving," in the context of "theft by receiving," quite broadly, in that it includes not only possession of property, title to property, lending on the security of property, but also "control" of property. The noun "control," used in this context, refers to "the act or fact of controlling." *Webster's Third New Int'l Dictionary* 496 (unabridged ed 2002). The verb "control," in turn, means "to exercise restraining or directing influence over" or "to have power over." *Id.* A person who buys, sells, or borrows on the security of property necessarily exercises some "directing influence over" the property in question, and thus "controls" it. In sum, defendant is correct that proof of "theft by receiving committed by buying, selling, borrowing or lending on the security of the property," ORS 164.055(1)(c), involves "receiving" as defined by ORS 164.095(3), because ORS 164.095(3) necessarily requires some form of "control * * * of the property." Defendant is correct that all of the elements of

the same owner constituted a single theft under ORS 164.015 and, therefore, a single crime of aggravated theft under ORS 164.057." *Id.* at 295. That analysis, however, was specific to the context of a double jeopardy issue, and such analyses require consideration of the underlying facts of a case, and are not limited to the elements of the crimes as pleaded in the indictment. *See State v. Watson,* 193 Or App 757, 761, 91 P3d 765, *rev den,* 337 Or 476 (2004) ("Deciding former jeopardy issues has always involved resolving factual questions."). Thus, we reject defendant's implicit suggestion that *Cox* affects the basic structure of our inquiry here.

[5] As noted, *see* 266 Or App at 354-55, 355 n 1, 2, ORS 164.098 incorporates by reference ORS 164.015, and ORS 164.015, in turn, incorporates by reference ORS 164.095.

first-degree theft as described in ORS 164.055(1)(c) are subsumed within the elements of organized retail theft, ORS 164.098.

We note, in addition, that this result, while not dictated by the analysis in *State v. Cox*, 336 Or 284, 82 P3d 619 (2003), is nonetheless consistent with the court's reasoning in that case. As noted above, 266 Or App at 357-58 n 4, in *Cox*, the court considered whether multiple prosecutions for theft were barred by the former jeopardy provision of ORS 131.515. The defendant in that case stole aluminum in Marion County and sold it the following day in Multnomah County. He was prosecuted in Marion County for aggravated theft and in Multnomah County for aggravated theft by receiving. 336 Or at 286. The question, under ORS 131.515, was whether the taking of the aluminum in Marion County and the selling of the same aluminum in Multnomah County constituted the "same offense." In deciding that matter, the court relied heavily on the manner in which the theft statutes are set forth in ORS chapter 164. It noted that ORS 164.015 sets forth the numerous different ways that theft may be committed, summarizing the legislative history of its enactment as part of the Oregon Criminal Code of 1971. *Id.* at 291. The court concluded:

> "ORS 164.015 * * * consolidat[ed] the various forms of unlawful property deprivation into a single offense of theft that does not depend on the relationship between the thief and the owner, the type of property, or the manner of deprivation. ORS 164.015 begins by specifying the required mental state for theft—the 'intent to deprive another of property or to appropriate property to the person or a third person.' Subsections (1) through (5) then enumerate various means by which a deprivation of property may occur, some of which are defined in separate statutes. ORS 164.065-164.095. Other than theft by extortion, however, those separate definitions do not create distinct offenses with their own punishments, as under the pre-1971 criminal code. By defining 'theft by receiving,' for example, ORS 164.095 does not create a separate crime punishable as a felony or a misdemeanor. Rather, it describes further the type of conduct that constitutes the single offense of theft under ORS 164.015, thereby making irrelevant the technical distinctions that characterized the previous regime

of separate statutory offenses. Thus, by bringing various methods of property deprivation under one umbrella, ORS 164.015 creates a single, consolidated offense that, at its core, prohibits the intentional and unlawful deprivation or appropriation of property from its owner."

*Id.* at 292.

The court went on to note that ORS 164.025(1) also supported that conclusion: "Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense." *Id.* (quoting ORS 164.025(1)). Thus, the court concluded that the structure of the theft statutes dictated that, with the exception of extortion, a theft constitutes a single offense. It bears noting that the court reached that conclusion in the context of the crime of aggravated first-degree theft, an offense added to the Criminal Code in 1987, but that incorporates first-degree theft as set forth in ORS 164.055. Similarly here, the crime of organized retail theft, ORS 164.098, was enacted in 2007. It incorporates, however, the basic definition of "theft" set forth in ORS 164.015, and thus, ORS 164.025 indicates that theft is a "single offense," regardless of whether multiple theories of theft are pleaded.

Thus, while *Cox* does not answer the question presented here, it provides strong contextual support for our conclusion that when the "same conduct" violates two different theft statutes, but those two statutes do *not* each require "proof of an element" that the other does not, ORS 161.067(1), the theft offenses merge.

Reversed and remanded with instructions to merge defendant's convictions for first-degree theft into his conviction for organized retail theft and for resentencing; otherwise affirmed.